

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-20-2004

# Chen v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3508

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Chen v. Atty Gen USA" (2004). *2004 Decisions.* Paper 801.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/801

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

NO. 03-3508

HUA-JIN CHEN
a/k/a HUA-GIN CHEN

v.

JOHN ASHCROFT, ATTORNEY GENERAL OF THE UNITED STATES,
Respondent,

Hua-Gin Chen,
Petitioner

On Petition for Review of an Order of the Board of Immigration Appeals
No. A77-293-468

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 16, 2004

BEFORE: RENDELL, STAPLETON and LAY,* Circuit Judges

(Opinion Filed: April 20, 2004)

* Hon. Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by
designation.

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Petitioner Hua Jin Chen, a native and citizen of the People's Republic of China, seeks review of an Immigration Judge's decision denying her application for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), and for protection under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment ("Torture Convention"). The decision of the Immigration Judge ("IJ") was summarily affirmed by the Board of Immigration Appeals ("BIA") without opinion. For the reasons that follow, we will deny the petition for review.

I.

As the parties are familiar with the facts and procedural history of this case, we review them only briefly. Chen arrived in the United States from China on October 4, 1999. She was promptly interviewed by officials of the Immigration and Naturalization Service ("INS") upon her arrival, and she was interviewed again on October 25th. On October 26, 1999, the INS issued a Notice to Appear charging her as being removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I) because she was "not in possession of a valid

unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document."

At a hearing on April 10, 2002 before the IJ, Chen admitted the allegations against her, conceded removability, and requested relief in the form of asylum, withholding of removal, and relief under the Torture Convention. She claimed that she was persecuted on account of political opinion because she was forced to abort a pregnancy. She further claimed to have a well-founded fear of future persecution because, prior to fleeing China, she had been scheduled to have an intrauterine device ("IUD") inserted by China's family planning office.

During the hearing, Chen testified that she learned that she was pregnant in July 1999 while she was not married. Afraid of the consequences for giving birth out-of-wedlock, she and her boyfriend, who were ages 21 and 24, respectively, went to the local marriage registration office to apply for permission to marry. Upon arriving at the office, they learned that their work unit required them to be at least age 23 and 25, respectively, in order to register for marriage.[1] According to Chen, the registration officers did not allow them to marry, and in fact became suspicious that Chen was perhaps pregnant. She was therefore taken to a hospital to provide a urine sample for a pregnancy test. Chen testified that she was afraid she would be forced to have an abortion if family planning

---

[1]The record indicates that China has a national policy of requiring females to be at least age 20 and males to be at least age 22 in order to marry. Individual work units, however, may set higher age requirements.

officers learned of her pregnancy, and so she attempted to defeat the pregnancy test by diluting her urine sample with water. This tactic apparently succeeded and Chen was allowed to return home after the results of her test were deemed inconclusive.

Chen further testified that several days after her initial visit to the marriage registration office, she returned in order to inquire whether a more definite result of her pregnancy test had been obtained. She stated that she believed the registration officers would allow her to register for marriage if they determined that she was not pregnant. Again, however, the office refused to allow her to register. Subsequently, on August 28, 1999, she received a notice requiring her to return to the hospital for another pregnancy test. This time, she was unable to dilute the urine sample and her pregnancy was discovered. Chen testified that she was then taken to a room and forced by family planning officers to ingest pills that caused her to abort her pregnancy. Approximately one month later, on September 24, 1999, she received a notice requiring her to report to the family planning office within two weeks for the insertion of an IUD. She testified that she was unwilling to undergo that procedure and therefore fled China for the United States.

In further support of her claim, Chen submitted into evidence a certificate, apparently issued by the Fujian Province, ChangLe City, JinFeng Town Medical Hospital, evidencing that an abortion was performed on her on August 28, 1999. She also submitted the notice from the Fujian Province, ChangLe City, JinFeng Town People's

4

Government Family Planning Birth Control Office ordering her to appear on October 7, 1999 for the insertion of an IUD.

Upon conclusion of the hearing, the IJ denied Chen's application, having found her not to be credible and having determined that she failed to meet her burden of proof for each requested form of relief. The BIA affirmed without opinion the IJ's decision on July 31, 2003. Chen then filed a timely petition for review.

II.

The IJ had jurisdiction pursuant to 8 C.F.R. § 208.2(b). The BIA had appellate jurisdiction pursuant to 8 C.F.R. § 1003.1(b). We have jurisdiction to review a final order of removal pursuant to 8 U.S.C. § 1252(a)(1). *See Coraggioso v. Ashcroft*, 355 F.3d 730, 731 (3d Cir. 2004). Where, as here, the BIA affirms without opinion the findings of the IJ pursuant to the Attorney General's streamlining regulations, 8 C.F.R. 1003.1(a)(7), "we review the IJ's opinion and scrutinize its reasoning." *Dia v. Ashcroft,* 353 F.3d 228, 245 (3d Cir.2003) (en banc).

An alien may be granted asylum if she meets the definition of "refugee" as defined in 8 U.S.C. § 1101(a)(42)(A). *Abdille v. Ashcroft*, 242 F.3d 477, 482 (3d Cir. 2001). Section 1101(a)(42)(A) defines "refugee," in relevant part, as

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or

5

political opinion.

8 U.S.C. § 1101(a)(42)(A). This definition further provides that "persecut[ion] on account of political opinion" includes "a person who has been forced to abort a pregnancy," and that "a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion." *Id.* "To qualify for withholding of removal, [Chen] must show that, if deported, there is a 'clear probability' that [she] will be persecuted on account of a specified ground – here, political opinion – if returned to [her] native country." *Dia*, 353 F.3d at 233 n.1 (citing *Zubeda v. Ashcroft*, 333 F.3d 463, 469 (3d Cir. 2003)). If the alien "fails to establish the well-founded fear of persecution required for a grant of asylum, . . . she will, by definition, have failed to establish the clear probability of persecution required for withholding of deportation." *Zubeda*, 333 F.3d at 469-70 (citing *Janusiak v. INS*, 947 F.2d 46, 47 (3d Cir. 1991)). To qualify for relief under the Torture Convention, an alien must prove that she "is more likely than not to be tortured in the country of removal." *Dia*, 353 F.3d at 233 n.1 (citing *Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir. 2003)). An alien bears the burden of supporting her claims through credible evidence. *Abdille*, 242 F.3d at 482.

## III.

Chen's petition challenges the IJ's adverse credibility determination. We

review such a determination using a substantial evidence standard. *Tarrawally v. Ashcroft*, 338 F.3d 180, 184 (3d Cir. 2003). This standard requires us to accept an IJ's findings of fact if they are "supported by reasonable, substantial and probative evidence on the record considered as a whole." *Id.* (quoting *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir. 1998)). Under the substantial evidence standard, an "adverse credibility determination must be upheld on review unless 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002) (quoting 8 U.S.C. § 1252(b)(4)(B)); *see also INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992). "Generally, minor inconsistencies and minor admissions that 'reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding.'" *Gao*, 299 F.3d at 272 (quoting *Vilorio-Lopez v. INS*, 852 F.2d 1137, 1142 (9th Cir. 1988)). "The discrepancies must involve the 'heart of the asylum claim,'" *id.* (quoting *Cabellos-Castillo v. INS*, 904 F.2d 519, 520 (9th Cir. 1990)), and "an IJ must support [his] adverse credibility findings with 'specific[,] cogent reasons.'" *Dia*, 353 F.3d at 249-50 (quoting *Gao*, 299 F.3d at 276; *Abdulrahman*, 330 F.3d at 597).

In this case, the IJ provided three reasons for concluding that Chen was not credible: (1) inconsistencies between her hearing testimony and interviews she gave to the INS on October 4th and October 25th; (2) inconsistencies between her testimony and the United States Department of State's Profile of Asylum Claims and Country Conditions

7

for China, dated April 14, 1998 (the "Country Report"); and (3) general implausibilities in her testimony.

During Chen's initial interview with INS officials on October 4, 1999, she stated that she was forced to undergo an abortion in April 1999. A.R. at 240. During her October 25th interview, however, she stated that April 1999 was when she had become pregnant, and that the abortion did not occur until August 1999. A.R. at 245. These statements, according to the IJ, were completely inconsistent with Chen's hearing testimony, during which she testified that she did not know that she was pregnant until July 1999. The IJ concluded that these inconsistencies called into question when Chen became pregnant and when the abortion took place. More importantly, the IJ noted that these inconsistencies called into question the authenticity of the abortion certificate that Chen was relying upon. Had the abortion occurred in April rather than August, the legitimacy of the abortion certificate, which evidenced an abortion on August 28, 1999, would be questionable. At the hearing, Chen did not attempt to explain any of these inconsistencies other than attributing them to translator error.[2]

---

[2] On appeal, Chen argues that the inconsistency with respect to when she became pregnant is entirely explainable. She contends that her October 25th interview reference to April 1999 was in answer to *when* she became pregnant, while her hearing testimony reference to July 1999 was in answer to *when she first learned* that she was pregnant. It is plausible, according to Chen, that during her October 25th interview, she was estimating that she had become pregnant in April 1999. Besides the fact that Chen did not raise this explanation until her opening brief on appeal, this explanation does not resolve the more significant inconsistency cited by the IJ as to whether her abortion occurred in April 1999 or August 1999.

The IJ also pointed to significant inconsistencies between Chen's testimony and the Country Report. The IJ noted that Chen's forced-abortion claim was contradicted by the Country Report's description of China's family planning practices in her home province of Fujian. According to the IJ, the report states that the U.S. Consulate General in Guanghzhou, Fujian Province, was "not aware of any forced abortions of illegitimate children or children of couples with an early marriage," but could not exclude the possibility. A.R. at 18. The IJ also relied upon the portion of the report that states:

> The U.S. Embassy and Consulate General are unaware of any so-called "abortion certificates," which often are presented as part of asylum applications as evidence of a forced abortion. According to Embassy officials, the only document that might resemble such a certificate and result in confusion is a document issued by hospitals upon a patient's request after a voluntary abortion. This certificate is used by patients as evidence to request 2 weeks of sick leave after an abortion has been performed, a right provided by the law.

*See* A.R. at 18.[3] Based on the Country Report, the IJ did not believe that Chen would be forced to undergo an abortion for becoming pregnant while too young to marry. According to the IJ, the Country Report also brought into question whether the abortion certificate submitted by Chen actually evidenced a forced abortion.

---

[3]The Country Report included in the Administrative Record, A.R. at 531-40, is missing several relevant pages, including the page containing the text we quote above. We take judicial notice of the report, however, because it clear to us that the IJ relied upon a complete version of the report, which is widely available and not subject to reasonable dispute. *See Dobrota v. INS*, 195 F.3d 970, 973 (7th Cir. 1999) (taking judicial notice of the State Department's country report on Romania).

9

Finally, the IJ did not believe that Chen's story was plausible. The IJ thought it unlikely that, although Chen had been with the work unit for four years and her boyfriend had been there six years, neither of them knew the unit's policy requiring a man and woman to be ages 25 and 23, respectively, in order to register for marriage. The IJ also did not believe that Chen and her boyfriend would go to the marriage registration office knowing that she was pregnant and believing that she was at risk of having an abortion forced upon her if her pregnancy were discovered. More importantly, the IJ did not believe that, given Chen's purported fear of a forced-abortion and knowing that she had previously just barely avoided detection of the pregnancy, she would return to the office to continue inquiring about the results of the pregnancy test. Accordingly, the IJ stated that he did not believe her story.

Chen points to no evidence in the record that would compel a reasonable adjudicator to conclude that her testimony was credible. The inconsistencies between her hearing testimony and answers she gave in her previous INS interviews were material to the timing of her pregnancy and purported abortion. Moreover, the Country Report, which may constitute substantial evidence to support an IJ's decision, *Kayembe v. Ashcroft*, 334 F.3d 231, 235-36 (3d Cir. 2003), casts doubt upon whether Chen's purported abortion was involuntary. The report actually indicates that abortion certificates issued by hospitals in China evidence voluntary abortions. Finally, the implausibilities cited by the IJ, while perhaps not sufficient by themselves, do lend

10

additional support to the IJ's decision. We therefore conclude that the IJ provided the

specific cogent reasons required for its adverse credibility determination.[4]

IV.

For the foregoing reasons, the petition for review will be denied.

---

[4]As Chen does not meet the "less exacting" standard necessary to obtain asylum, there is no need to consider whether she met "more rigorous" standard for establishing eligibility for withholding of removal and relief under the Torture Convention. *See Zubeda*, 333 F.3d at 469-70; *Chang v. INS*, 119 F.3d 1055, 1066 (3d Cir. 1997); 8 C.F.R. § 208.16(c)(2).